# UNITED STATES DISTRICT COURT
## DISTRICT OF NEW JERSEY

|  |  |  |
|---|---|---|
| CRAIG FRANCIS SZEMPLE, | : | |
| Plaintiff, | : | Civil Action No. 07-4809 (SDW) (MCA) |
| v. | : | **OPINION** |
| CORRECTIONAL MEDICAL SERVICES, INC., NEW JERSEY DEPARTMENT OF CORRECTIONS, GEORGE HAYMAN, RICHARD CEVASCO, PH.D., THOMAS FARRELL, BRUCE A. HAUCK, MS. IFILL, DR. HOCHBERG, JOHN DOE(S), MIKE POWERS, JOY BLACK, ELMIRA KAPCHITS, GEORGE E. ACHEBE, CMS JOHN AND JANE DOES 1-30, NJDOC JOHN AND JANE DOES 1-30,[1] | : | January 18, 2012 |
| Defendants. | : | |

**WIGENTON**, District Judge.

Before the Court is Defendants Dr. John Hochberg ("Hochberg"), Dr. Elmira Kapchits

("Kapchits"), Dr. George Achebe ("Achebe") (collectively "medical Defendants"), and

Correctional Medical Services, Inc.'s ("CMS") (collectively "Defendants") Motion to Dismiss

pursuant to Fed. R. Civ. P. 12(b)(6),[2] or in the alternative, Motion for Summary Judgment

---

[1] Pursuant to a Stipulation of Dismissal, Defendants New Jersey Department of Corrections, George Hayman, Dr. Richard Cevasco, Thomas Farrell, Bruce Hauck, Mike Powers, and Joy Black have been terminated as parties and are no longer defendants in the case. (Docket Entry No. 78).

[2] Defendants' Motion to Dismiss was improperly filed pursuant to Fed. R. Civ. P. 12(b)(6) after the Amended Complaint had been answered. "A Rule 12(b) motion to dismiss a complaint must be filed before any responsive pleading. A Rule 12(c) motion for judgment on the pleadings may be filed after the pleadings are closed." Turbe v. Gov't of Virgin Islands, 938 F.2d 427, 428 (3d Cir. 1991). However, "[s]ince the Rule 12(c) motion serves the same function as the untimely motion under Rule 12(b)(6), numerous courts faced with 'a misnamed motion to dismiss have chosen to overlook the semantic faux pas and restyled the motion as a Rule 12(c) motion'. . . ." Tr. of the Univ. of Pa. v. Mayflower Transit, Civ. A. No. 97-1111, 1997 WL 598001, at *2 (E.D. Pa. Sept. 16, 1997) (quoting Delta Truck & Tractor, Inc. v. Navistar Int'l. Transp. Corp., 833 F. Supp. 587, 588 (W.D. La. 1993)).

1

pursuant to Fed. R. Civ. P. 56(c), Plaintiff Craig Szemple's ("Plaintiff" or "Szemple") Cross-Motion for Summary Judgment pursuant to Fed. R. Civ. P. 56(c), and Plaintiff's Motion to Strike Defendants' Counter-Statement of Material Facts for Non-Conformance with L. Civ. R. 56.1 ("Motions"). This Court has jurisdiction over this matter pursuant to 28 U.S.C. §§ 1331, 1343 and 1367. Venue is proper in this District pursuant to 28 U.S.C. § 1931. These Motions are decided without oral argument pursuant to Fed. R. Civ. P. 78. For the reasons stated below, this Court grants Defendants' Motion for Summary Judgment,[3] denies Plaintiff's Cross-Motion for Summary Judgment as moot, and denies Plaintiff's Motion to Strike Defendants' Counter-Statement of Material Facts.

**FACTUAL AND PROCEDURAL HISTORY**

Szemple has been incarcerated by the New Jersey Department of Corrections ("NJDOC") since August 26, 1994, and is currently housed at the Northern State Prison in Newark, New Jersey.[4] (Defs.' Statement of Facts ¶¶ 1, 3.) In 1996, the NJDOC entered into a contract with CMS. (Defs.' Ex. D, Woodard Dep. 25:1-2.) Pursuant to the contract, CMS provided medical care to inmates. (Am. Compl. ¶ 12.) The contract was terminated in March 2008. (Defs.' Ex. D, Woodard Dep. 25:4-8.)

Plaintiff was diagnosed with cervical radiculopathy sometime in 2001. (Pl.'s Exs. Pa31, 32.) On September 23, 2002, he was evaluated by a neurosurgeon, Dr. Francis Pizzi ("Pizzi"), who recommended that Plaintiff undergo conservative measures of treatment such as physical therapy or see a chiropractor. (Id. at 41.) If those two forms of treatment failed, Pizzi suggested that Szemple "may be a good candidate for cervical epidural injections." (Id.) Additionally,

---

[3] Plaintiff's Cross-Motion is mooted by the Court's grant of summary judgment to Defendants. Therefore, this Opinion will not address the Cross-Motion.
[4] Szemple was initially incarcerated at New Jersey State Prison. On November 7, 2005, he was transferred to East Jersey State Prison. Subsequently, in July 2007, he was transferred to Northern State Prison. (Am. Compl. ¶ 20.)

Pizzi acknowledged that he may need to re-evaluate Plaintiff "to discuss a more aggressive approach" if Plaintiff's condition persisted.  (Id.)

Consequently, Plaintiff was referred for physical therapy in October 2002.  (Id. at 42.)  In addition, he was prescribed several medications to alleviate the pain.  On January 8, 2003, Plaintiff was referred for a cervical epidural steroid injection at the Pain Management Center with Dr. Adam Sackstein ("Sackstein").  (Id. at 60-61.)  Szemple was approved for a maximum of three epidural steroid injections.  (Id. at 63.)  Nonetheless, Plaintiff continued to complain of pain.  On February 17, 2004, Szemple was referred for another neurosurgery consult.  (Id. at 80.)  Pizzi, once again, recommended that Plaintiff be given cervical epidural steroid injections and undergo an MRI.  (Id. at 81.)  However, he noted that Plaintiff "may be a good candidate for" fusion surgery if the recommended treatments were ineffective.  (Id.)  On May 10, 2004, Plaintiff underwent an MRI.  (Id. at 84.)

On February 28, 2005, Plaintiff saw Achebe, New Jersey State Prison's then medical director.  During that visit, Plaintiff complained of pain in his right elbow and left knee.  (Id. at 99.)  Achebe referred Plaintiff for an orthopedics consult and prescribed him Mobic, Duragesic patch, and Zetia.  (Id. at 100.)

Pizzi reevaluated Plaintiff on October 28, 2005, after he was transferred to East Jersey State Prison and noted that Szemple had "cervical epidural steroid injections with some improvement."  (Id. at 112.)  Pizzi suggested that Szemple undergo another series of epidural steroid injections.  (Id.)  Subsequently, on November 23, 2005, Plaintiff was reevaluated by Sackstein who indicated that Plaintiff's pain medication included OxyContin, Duragesic patch, and Vicodin.  (Id. at 115-116.)

On January 20, 2006, Plaintiff requested a consultation with Kapchits, East Jersey State Prison's medical director, to discuss Sackstein's additional recommendations made on January 18, 2006.[5]  (Id. at 119.)  Consequently, on January 23, 2006, Kapchits saw Plaintiff and referred him for another consultation with Sackstein.  (Id. at 120.)  Additional epidural steroid injections were ordered for Plaintiff on February 10, 2006.  (Id. at 124.)

On June 21, 2006, Kapchits noted that Sackstein had seen Plaintiff on the same day and that the steroid injections had failed.  (Id. at 128.)  Kapchits increased Plaintiff's Duragesic patch and Vicodin dosages and ordered a neurosurgery consult with Pizzi.  (Id.; Defs.' Ex. G-12 at 812.)  On November 27, 2006, Plaintiff underwent an MRI.  (Id. at 135-136.)  Kapchits reviewed the results of the MRI and ordered Szemple pain medication.  (Pl.'s Ex. Pa137.)  Thereafter, on December 20, 2006, Szemple was referred for pain management consultation.  (Id. at 138.)  Pursuant to the consultation, Kapchits discontinued Plaintiff's Vicodin and prescribed steroid injections and Demerol.  (Id. at 139.)  Furthermore, Kapchits ordered a flat bed for Szemple.  (Id.)

Hochberg, Northern State Prison's medical director, saw Plaintiff on July 5, 2007, after he was transferred there.  (Id. at 151.)  Hochberg noted that Plaintiff had multiple orthopedic problems and ordered him a lower bunk with flats.  (Id.)  Although Hochberg discontinued two of Szemple's pain medications, Lidoderm and Demerol, because he had concerns about the dosages, Plaintiff continued using the Duragesic patches.  (Id. at 153, 163.)  On August 30, 2007, Hochberg noted that Szemple "admits to being in no more pain since coming under my care." (Id. at 163.)  Nonetheless, on September 12, 2007, Sackstein reevaluated Plaintiff and concluded that Plaintiff resume his previous regimen of Lidoderm, Demerol, and the Duragesic patch.  (Id. at 169.)   Moroever, Sackstein recommended that Szemple undergo additional steroid injections. (Id.) Consistent with Sackstein's recommendations, Hochberg ordered Lidederm, Demerol and

---

[5] Sackstein's January 18, 2006 recommendations are not included in the record.

Duragesic patches for Plaintiff on October 10, 2007.  (Id. at 172.)  Furthermore, Hochberg

ordered that Plaintiff be referred for an orthopedic and pain management consultation.  (Id. at

173.)

Although Szemple informed Sackstein at the September 12, 2007 consultation that "he

had been doing well on the" Lidoderm, Demerol, and Duragesic patch regimen, (id. at 169), he

alleges that his pain persisted.  Even though his pain persisted, Plaintiff contends that Defendants

did not evaluate him for spinal surgery fusion as Pizzi recommended on February 17, 2004.

On October 4, 2007, Szemple, proceeding *pro se*, filed this action.  On May 24, 2010,

Plaintiff, with the assistance of counsel, filed an Amended Complaint alleging that Defendants

"failed to treat Plaintiff's documented medical condition" and that they have only "attempted to

manage Plaintiff's pain."  (Am. Compl. ¶ 32.)  According to Szemple, Defendants failed to

provide him the necessary treatment because they wanted "to save costs."  (Id.)  Additionally,

Szemple asserts that Defendants failed to maintain accurate medical records.  (Id. ¶¶ 34-45.)

Plaintiff asserts that Defendants' conduct: (1) is in violation of 42 U.S.C. § 1983 because

they failed to provide him adequate medical care and maintain adequate medical records[6] (first

and third claims); (2) constituted medical malpractice (second claim); and (3) violated the New

Jersey Civil Rights Act ("NJCRA"), N.J. Stat. Ann. § 10:6-2 (fourth claim).

## LEGAL STANDARD[7]

Summary judgment is appropriate "if the movant shows that there is no genuine dispute

as to any material fact and the movant is entitled to judgment as a matter of law."  Fed. R. Civ. P.

---

[6] Neither Defendants nor Plaintiff address the claim for failure to maintain adequate medical records. Consequently, this Opinion does not discuss that claim.

[7] Defendants' motion will be treated solely as one for summary judgment because the Court will be considering facts and other evidence outside the pleadings, discovery is complete, Szemple has been given a reasonable opportunity to present materials relevant to the motion, and both parties have moved for summary judgment. Consequently, the Court will not set forth the Fed. R. Civ. P. 12(b)(6) motion to dismiss standard.

56(a).  The "mere existence of <u>some</u> alleged factual dispute between the parties will not defeat an otherwise properly supported motion for summary judgment; the requirement is that there be no <u>genuine</u> issue of <u>material</u> fact."  <u>Anderson v. Liberty Lobby, Inc.</u>, 477 U.S. 242, 247–48 (1986). A fact is only "material" for purposes of a summary judgment motion if a dispute over that fact "might affect the outcome of the suit under the governing law."  <u>Id.</u> at 248.  A dispute about a material fact is "genuine" if "the evidence is such that a reasonable jury could return a verdict for the nonmoving party."  <u>Id.</u>  The dispute is not genuine if it merely involves "some metaphysical doubt as to the material facts."  <u>Matsushita Elec. Indus. Co. v. Zenith Radio Corp.</u>, 475 U.S. 574, 586 (1986).

The moving party must show that if the evidentiary material of record were reduced to admissible evidence in court, it would be insufficient to permit the non-moving party to carry its burden of proof.  <u>Celotex Corp. v. Catrett</u>, 477 U.S. 317, 322-23 (1986).  Once the moving party meets its initial burden, the burden then shifts to the non-movant who must set forth specific facts showing a genuine issue for trial and may not rest upon the mere allegations, speculations, unsupported assertions or denials of its pleadings.  <u>Shields v. Zuccarini</u>, 254 F.3d 476, 481 (3d Cir. 2001).  "In considering a motion for summary judgment, a district court may not make credibility determinations or engage in any weighing of the evidence; instead, the non-moving party's evidence 'is to be believed and all justifiable inferences are to be drawn in his favor.'"  <u>Marino v. Indus. Crating Co.</u>, 358 F.3d 241, 247 (3d Cir. 2004) (quoting <u>Anderson</u>, 477 U.S. at 255).

The nonmoving party "must present more than just 'bare assertions, conclusory allegations or suspicions' to show the existence of a genuine issue."  <u>Podobnik v. U.S. Postal Serv.</u>, 409 F.3d 584, 594 (3d Cir. 2005) (quoting <u>Celotex Corp.</u>, 477 U.S. at 325).  Further, the

nonmoving party is required to "point to concrete evidence in the record which supports each essential element of its case."  Black Car Assistance Corp. v. New Jersey, 351 F. Supp. 2d 284, 286 (D.N.J. 2004).  If the nonmoving party "fails to make a showing sufficient to establish the existence of an element essential to that party's case, and on which . . . [it has] the burden of proof," then the moving party is entitled to judgment as a matter of law.  Celotex Corp., 477 U.S. at 322-23.

**DISCUSSION**

1. Section 1983 Claim

Section 1983 creates a federal remedy for individuals who have been deprived by state officials of their constitutional rights and privileges.  See generally Gonzaga Univ. v. Doe, 536 U.S. 273 (2002).  The statute provides in relevant part that "[e]very person, who under color of any statute, ordinance, regulation . . . subjects, or causes to be subjected, any citizen of the United States . . . to the deprivation of any rights, privileges, or immunities secured by the Constitution and laws, shall be liable to the party injured . . . ." 42 U.S.C. § 1983.  Section 1983 does not "[b]y itself . . . create any rights, but provides a remedy for violations of those rights created by the Constitution or federal law."  Morse v. Lower Merion Sch. Dist., 132 F.3d 902, 906-07 (3d Cir. 1997) (citing Baker v. McCollan, 443 U.S. 137, 144 n.3 (1979)).  To recover under § 1983, the Plaintiff must "allege the violation of a right secured by the Constitution and laws of the United States, and must show that the alleged deprivation was committed by a person acting under color of state law."  West v. Atkins, 487 U.S. 42, 48 (1988).  To establish that CMS is liable under § 1983, Plaintiff must show that there was a "relevant . . . policy or custom, and that the policy caused the constitutional violation."  Natale v. Camden Cnty. Corr. Facility, 318 F.3d 575, 584 (3d Cir. 2003).

a.   <u>Denial of Medical Care</u>

"The Eighth Amendment, which applies to the states by virtue of the Fourteenth Amendment, prohibits" punishments that are "cruel and unusual." <u>Jackson v. Danberg</u>, 594 F.3d 210, 216 (3d Cir. 2010).   An Eighth Amendment claim includes an objective component, whether the deprivation of a basic human need is sufficiently serious, and a subjective component, whether the officials acted with a sufficiently culpable state of mind.   <u>Wilson v. Seiter</u>, 501 U.S. 294, 298 (1991).   The objective component is "contextual and responsive to 'contemporary standards of decency.'"   <u>Hudson v. McMillian</u>, 503 U.S. 1, 8 (1992) (quoting <u>Estelle v. Gamble</u>, 429 U.S. 97, 103 (1976)).   The subjective component "follows from the principle that 'only the unnecessary and wanton infliction of pain implicates the Eighth Amendment.'"   <u>Farmer v. Brennan</u>, 511 U.S. 825, 834 (1994) (quoting <u>Wilson</u>, 501 U.S. at 297). "What is necessary to establish an 'unnecessary and wanton infliction of pain,' . . . varies according to the nature of the alleged constitutional violation." <u>Hudson</u>, 503 U.S. at 5 (quoting <u>Whitley v. Albers</u>, 475 U.S. 312, 320 (1986)).

Where the claim is one alleging the failure to provide medical care, the core inquiry is whether the defendant's actions constituted "deliberate indifference" to an inmate's serious medical needs.   <u>Estelle</u>, 429 U.S. at 104.   Deliberate indifference is shown if a defendant "intentionally den[ies] or delay[s] access to medical care or intentionally interfere[es] with the treatment once prescribed."   <u>Id.</u> at 104-05.   Furthermore, deliberate indifference can be manifested by "persistent conduct in the face of resultant pain and risk of permanent injury." <u>White v. Napoleon</u>, 897 F.2d 103, 109 (3d Cir. 1990).   Moreover, "[s]hort of absolute denial, if necessary medical treatment is . . . delayed for non-medical reasons, a case of deliberate indifference has been made out."   <u>Monmouth Cnty. Corr. Institutional Inmates v. Lanzaro</u>, 834

F.2d 326, 346 (3d Cir. 1987) (alterations in original) (internal quotation marks and citation omitted).    A medical need is serious if it "has been diagnosed by a physician as requiring treatment or . . . so obvious that a lay person would easily recognize the necessity for a doctor's attention." Atkinson v. Taylor, 316 F.3d 257, 272-73 (3d Cir. 2003) (internal quotation marks and citation omitted).    However, "[a]llegations of medical malpractice or mere disagreement as to the proper medical treatment are insufficient to establish a constitutional violation." Szemple v. Univ. of Med. & Dentistry, No. 11-1376, 2011 U.S. App. LEXIS 22914, at *8 (3d Cir. Nov. 16, 2011) (citing Spruill v. Gillis, 372 F.3d 218, 235 (3d Cir. 2004)).

Szemple argues that Defendants failed to treat his serious medical need.    Specifically, Plaintiff maintains that Defendants refused to have him evaluated for spinal fusion surgery. (Pl.'s Opp'n Br. 49.)[8]    On the other hand, Defendants contend that Plaintiff's claim should be dismissed because he has failed to: (1) exhaust his administrative remedies as required under the Prison Litigation Reform Act ("PLRA"), 42 U.S.C. § 1997e; (2) establish that CMS has a policy or custom which violated his constitutional rights; and (3) show the medical Defendants were deliberately indifferent to his medical needs.    Each of these arguments will be addressed below.

---

[8] Szemple alleges, for the first time, in his opposition brief that the Defendants were deliberately indifferent to his medical needs because they failed to provide him with his prescribed pain medications on several occasions.  (Pl.'s Opp'n Br. 58.)  The Amended Complaint does not contain any such allegations.  It merely states that "CMS'[s] custom and/or policy at all relevant times was to avoid providing recommended – and potentially expensive – courses of treatment and, instead, continue with [] pain regiments and other less expensive measures despite being aware of their ineffectiveness . . . ."  (Am. Compl. ¶ 53.)  "[W]hen the allegation is not set forth in the Amended Complaint or alleged at the time of plaintiff's deposition, this cause of action cannot be recognized."  Adegbuji v. Middlesex Cnty., Civ. A. No. 03-1757, 2006 U.S. Dist. LEXIS 70527, at *26-27 (D.N.J. Sept. 28, 2006).  Moreover, the rule that courts "should liberally construe" a pro se plaintiff's complaint does not apply in this instance because Szemple was represented by counsel when he filed the Amended Complaint.  Id. at 26.  Consequently, Szemple cannot assert a new basis for liability that was not included in the Amended Complaint.  In any event, even if Defendants allowed Plaintiff's medication to lapse, that alone is insufficient to show that they violated his Eighth Amendment rights because he has failed to present any evidence demonstrating that he suffered an injury as a result of Defendants' actions.  See Jackson v. Fauver, 334 F. Supp. 2d 697, 717-19 (D.N.J. 2004) (granting motion for summary judgment and denying Eighth Amendment claims for failure to provide adequate medical care because the plaintiffs failed to establish that he was injured by the lapses in medication and treatment).

i.  Exhaustion under the PLRA

The PLRA, states that "[n]o action shall be brought with respect to prison conditions under section . . . [1983 of this title], or any other Federal law, by a prisoner confined in any jail, prison, or other correctional facility until such administrative remedies as are available are exhausted."  42 U.S.C. § 1997e(a).  Therefore, if a prisoner has not properly exhausted the available administrative remedies, a federal court must dismiss the case.  Woodford v. Ngo, 548 U.S. 81 (2006).  "[T]he PLRA's exhaustion requirement applies to all inmate suits about prison life, whether they involve general circumstances or particular episodes, and whether they allege excessive force or some other wrong."  Porter v. Nussle, 534 U.S. 516, 532 (2002).  Grievance procedures in inmate handbooks are administrative procedures that must be exhausted prior to the filing of a suit.  Concepcion v. Morton, 306 F.3d 1347, 1348-49 (3d Cir. 2002).  The administrative process must be followed to completion before suit may be brought in federal court; a prisoner does not exhaust administrative remedies until a grievance is fully pursued through each level of appeal available in the prison's system.  Spruill, 372 F.3d at 222; Nyhuis v. Reno, 204 F.3d 65 (3d Cir. 2000).

The PLRA's exhaustion requirement applies to Szemple because he was incarcerated at the time of the filing of his initial complaint.  Abdul-Akbar v. McKelvie, 239 F.3d 307, 314 (3d Cir. 2001).  Defendants maintain that Szemple has not filed any remedy forms pertaining to the allegations in his Amended Complaint.  Plaintiff contends that he has exhausted his administrative remedies because he filed several remedy forms before initiating this action.  The remedy forms Szemple points to pertain to his allegations that Defendants allowed his pain medication to lapse.  (See Pl.'s Exs. Pa72, 78, 104-106.)  However, Plaintiff's medical care claim is based on Defendants' alleged failure to have him evaluated for spinal fusion surgery.  (See

generally Am. Compl. ¶¶ 27-32, 46-53.)   Accordingly, Plaintiff cannot rely on those remedy forms as a basis for arguing that he exhausted his administrative remedies.

Nonetheless, Szemple maintains that on June 10, 2005, he submitted a remedy form in which he specifically stated that Defendants were unwilling to consider spinal fusion surgery even though that treatment was been recommend.  (Pl.'s Opp'n Br. 14-15, Defs.' Ex. H.)  That remedy form does not relate to Defendants' alleged refusal to refer him for a spinal fusion surgery evaluation; it is primarily about a reduction in the dosage of his medication.  Szemple mentions that surgery has been recommended only to emphasize that his dosage should not have been reduced.  (Id. at 1-2.)  Plaintiff did not request to be referred for a spinal fusion surgery evaluation in that remedy form.  In fact, Szemple did not submit a remedy form relating to the claims in this action until April 14, 2010, about two and a half year after the filing of the initial complaint.  (Id. at 3.)  In conclusion, he has failed to exhaust his administrative remedies and he is precluded from bringing a claim for the violation of his Eighth Amendment rights against Defendants.

In addition to failing to exhaust his administrative remedies, Szemple has failed to demonstrate that CMS has an illegal custom or policy or that it was personally involved in the alleged violation of his Eighth Amendment rights.  Furthermore, Szemple has not established that the medical Defendants were deliberately indifferent to his medical needs.

A.  CMS's Liability

i.  CMS's Custom or Policy

Szemple maintains that CMS's policy is to limit inmate consultations to non-surgical treatments.  (Pl.'s Opp'n Br. 47.)  Defendants, on the other hand, maintain that Plaintiff has not identified any CMS custom or policy that violated his constitutional rights.  (Defs.' Br. 9.)  This

11

Court concludes that Plaintiff has failed to establish that CMS has a policy that limits consultations to non-surgical consultations for non-medical reasons.

According to Plaintiff, Achebe, Kapchits, Pizzi, and Sackstein informed him that his consultations had to be limited to non-surgical consultations because "spinal fusion surgery [i]s simply 'not in CMS's budget.'" (Pl.'s Opp'n Br. 48.) Plaintiff makes this bald assertion without providing any evidence to support it. Plaintiff "must present more than bare assertions" to survive a summary judgment motion. Podobnik, 409 F.3d at 594 (internal quotation marks and citation omitted); see also Jackson, 334 F. Supp. 2d at 718 ("Unsupported allegations are not sufficient to survive a motion for summary judgment."). Additionally, the record indicates that Kapchits ordered a neurosurgery consult for Plaintiff on, at least, three occasions. (See Pl.'s Ex. Pa128, Defs.' Ex. G-11 at 707, 740.) Moreover, CMS has provided surgeries for Szemple on several occasions including carpal tunnel, (Defs.' Ex. G-20 at 1346), open heart, knee, and shoulder surgeries. (Pl.'s Ex. Pa40.) Therefore, the record belies Plaintiff's contention that CMS's policy does not allow for surgical consultations.

Furthermore, CMS's vice president testified that cost was "never" a factor in determining whether an inmate should be referred to an outside consultant. (Defs.' Ex. E, Amodei Dep. 47:6-8.) She also testified that CMS's budget is broken down in such a way that it would be impossible to determine if it went over its budget for off-site consultations. (Id. at 48:20-23.) This testimony directly contradicts Plaintiff's assertions that he was denied a referral for a surgical consultation because it was not in CMS's budget.

Moreover, Plaintiff has not shown that CMS refused to refer other inmates for surgical consultations for the reasons he alleges. See Morgan v. Irvington Police Dep't, Civ. A. No. 10-0292, 2010 U.S. Dist. LEXIS 50885, at *12 (D.N.J. May 21, 2010) (stating that a single incident

is insufficient to infer custom or policy).  Plaintiff has therefore failed to present any proof that CMS has an illegal custom or policy that prevented him from being evaluated for spinal fusion surgery.

### ii.  *Respondeat Superior* Liability

Defendants accurately point out that a corporate entity providing medical care for inmates cannot be liable under § 1983 entirely on a theory of *respondeat superior*.  Evancho v. Fisher, 423 F.3d 347, 353 (3d Cir. 2005) (citing Rode v. Dellarciprete, 845 F.2d 1195, 1207 (3d Cir. 1988)).  Plaintiff must establish that the defendant was "personally involved" in violating the plaintiff's rights.  Johnson v. Derose, 349 F. App'x 679, 681 (3d Cir. 2009).  "Personal involvement can be shown through allegations of personal direction or of actual knowledge and acquiescence."  Rode, 845 F.2d at 1207.  Here, Plaintiff has not provided any evidence that will establish that CMS directed its employees to deny him a surgical consultation.  Similarly, Szemple has not shown that CMS had actual knowledge of its employees' alleged refusal to evaluate him for spinal fusion surgery.  Thus, Szemple has not presented any proof that CMS was personally involved in the alleged violation if his Eighth Amendment rights.

### B.  Medical Defendants' Liability

Plaintiff's allegations that the medical Defendants refused to refer him for spinal fusion surgery although Pizzi recommended such treatment does not constitute deliberate indifference.  "[I]t [i]s within the discretion of those doctors to seek a reasonable alternative means of treatment."  Davidson v.  Corr. Med. Servs., Civ. A. No. 08-3580, 2010 U.S. Dist. LEXIS 4937, at *36 (D.N.J. Jan. 19, 2010).  Additionally, as the Third Circuit has noted "mere disagreements over medical judgment do not state Eighth Amendment claims" because there may be "several

acceptable ways to treat an illness."  White, 897 F.2d at 110; see also Hodge v. United States

Dep't of Justice, 372 F. App'x 264, 268 (3d Cir. 2010) ("disagreements . . . among physicians,

concerning the course of medical treatment . . . do not support a claim for a violation of the

Eighth Amendment."); Ham v. Greer, 269 F. App'x 149, 151 (3d Cir. 2008) ("Ham's primary

dispute, in essence, is that he did not receive the kind or quality of treatment that he would have

preferred. This simply does not rise to the level of a violation of a constitutionally protected

right.").

        Moreover, Plaintiff relies solely on Pizzi's February 17, 2004 recommendation that he

may be a good candidate for spinal fusion surgery.  However, Pizzi saw Szemple on September

22, 2010, and he did not recommend that Plaintiff be considered for surgery.  (Pl.'s Ex. Pa226.)

The record also indicates that Plaintiff was provided continuous medical care for his condition.

For instance, Szemple was examined by several physicians and underwent different kinds of

treatment, numerous MRI testing, x-rays, and follow-up evaluations.  Furthermore, Kapchits

ordered a neurosurgery consult with Pizzi for Plaintiff on three occasions.  (See Pl.'s Ex. Pa128,

Defs.' Ex. G-11 at 707, 740.)  Additionally, as indicated earlier, Plaintiff informed Sackstein that

his medication regimen was effective and that he was "doing well."  (Pl.'s Ex. Pa169.)  The fact

that Plaintiff now claims that these methods have been unsuccessful does not mean that the

medical Defendants did not act in good faith or that they were deliberately indifferent.

    2.  Medical Malpractice Claim

        "To establish a *prima facie* case of negligence in a medical malpractice action, a plaintiff

must present expert testimony establishing: (1) an applicable standard of care, (2) a deviation

from this standard of care, (3) injury, and (4) proximate causation between the breach and the

injury." <u>Jackson</u>, 334 F. Supp. 2d at 740 (citing <u>Teilhaber v. Greene</u>, 320 N.J. Super. 453, 465 (App. Div. 1999)); <u>see also</u> N.J. Stat. Ann. § 53A-27.

Plaintiff's medical malpractice claim suffers from a fatal defect: he has failed to file an affidavit of merit as to Defendants.  Pursuant to the New Jersey Affidavit of Merit Statute, N.J. Stat. Ann. § 53A-26 to -29, Szemple is required to file an Affidavit of Merit.  N.J. Stat. Ann. § 53A-27 provides in relevant part:

> In any action for damages for personal injuries . . . resulting from an alleged act of malpractice or negligence by a licensed person in his profession or occupation, the plaintiff shall, within 60 days following the date of filing of the answer to the complaint by the defendant, provide <u>each defendant</u> with an affidavit of an appropriate licensed person that there exists a reasonable probability that the care, skill or knowledge exercised or exhibited in the treatment, practice or work that is the subject of the complaint, fell outside acceptable professional or occupational standards or treatment practices.

(emphasis added).

On January 14, 2011, Magistrate Judge Madeline Arleo granted Plaintiff's request for a sixty-day extension to file his Affidavit of Merit.  On March 14, 2011, Szemple filed an Affidavit of Merit.  (Docket Entry No. 106).  However, that Affidavit of Merit only addressed Plaintiff's claims against the NJDOC; it did not address his claims against Defendants.  (<u>See id.</u>). Therefore, on March 31, 2011, Judge Arleo gave Plaintiff another sixty-day extension to amend his Affidavit of Merit and include his claims against Defendants.  (<u>See</u> Docket Entry No. 109). Subsequently, on June 15, 2011, Plaintiff filed a motion to vacate Judge Arleo's March 31, 2011 Order requiring him to amend his Affidavit of Merit.  On June 30, 2011, Judge Arleo denied Plaintiff's motion and concluded that there was "no basis to vacate that portion of the Scheduling Order regarding the necessity of an additional Affidavit of Merit."  (Docket Entry No. 120 at 1).

Notwithstanding Szemple's knowledge that he was required to file an additional Affidavit of Merit, he failed to file one.

In an attempt to avoid the consequences of his failure to comply with the Court's order requiring him file an additional Affidavit of Merit, Plaintiff now asserts that the "common knowledge" exception applies to this case because his medical malpractice claim is based solely on the medical Defendants' failure to provide him with prescribed or recommended pain medications.    (Pl.'s Opp'n Br. 66.)    "Under the common knowledge exception, if the professional negligence would be obvious to a layperson, the Statute does not require an Affidavit."  Bryan v. Shah, 351 F. Supp. 2d 295, 298 (D.N.J. 2005).  However, as indicated earlier, the Amended Complaint only asserts that Defendants refused to refer him for a spinal fusion surgery evaluation.  There are no allegations in the Amended Complaint that Defendants deprived Szemple of prescribed pain medication.  Therefore, Plaintiff cannot assert liability under these new allegations.

3.  NJCRA Claim

Plaintiff contends that Defendants' conduct has "caused an increase in physical injury" and is in violation of the NJCRA.  (Am. Compl. ¶ 77.)  According to Szemple, Defendants deprived him of rights secured by the Eighth Amendment and Article I, paragraph[9] 12 of the New Jersey Constitution.  (Id. ¶ 76.)  N.J. Stat. Ann. § 10:6-2 provides in relevant part:

> Any person who has been deprived of any substantive due process or equal rights . . . secured by the Constitution or laws of the United States, or any substantive rights . . . secured by the Constitution or laws of this State . . . by a person acting under color of law, may bring a civil action for damages and for injunctive or other appropriate relief.

---

[9] The Amended Complaint states that Defendants violated Article I, § 12 of the New Jersey Constitution.  The Court assumes that Plaintiff is referring to paragraph 12 because there are no sections in Article I of the New Jersey Constitution.

Article I, paragraph 12 of the New Jersey Constitution provides in pertinent part: "Excessive bail shall not be required, excessive fines shall not be imposed, and cruel and unusual punishment shall not be inflicted."   N.J. Const. Art. I, Para 12.   "Courts have repeatedly construed the NJCRA in terms nearly identical to its federal counterpart: Section 1983."   Stroby v. Egg Harbor Twp., 754 F. Supp. 2d 716, 721 n.5 (D.N.J. 2010) (quoting Chapman v. State of New Jersey, Civ. A. No. 08-4130, 2009 U.S. Dist. LEXIS 75720, at *7 (Aug. 25, 2009)) (internal quotation marks omitted).  As a result, Plaintiff's claim under the NJCRA must fail for the same reasons his § 1983 claim fails.

4.  Intentional Infliction of Emotional Distress Claim

Generally, to establish a claim for intentional infliction of emotional distress, the plaintiff must show "intentional and outrageous conduct by the defendant, proximate cause, and distress that is severe."  Buckley v. Trenton Sav. Fund Soc'y, 111 N.J. 355, 366 (1988).  Conduct is outrageous when it is "so extreme in degree, as to go beyond all possible bounds of decency, and to be regarded as atrocious, and utterly intolerable in a civilized community."  Id.  (internal quotation marks and citation omitted).  "The liability clearly does not extend to mere insults, indignities, threats, annoyances, petty oppressions, or other trivialities."  Taylor v. Metzger, 152 N.J. 490, 509 (1998) (quoting 49 Prospect St. Tenants Ass'n v. Sheva Gardens, Inc., 227 N.J. Super. 449, 472 (App. Div. 1988)) (internal quotation marks omitted).

Without determining whether Defendants' conduct was outrageous this Court finds that Szemple has not established that he has suffered severe distress as a result of Defendants' actions.  Plaintiff maintains that he is diagnosed with post-traumatic stress disorder ("PTSD") and Defendants' conduct aggravated his condition.  (Pl.'s Opp'n Br. 69.)  Szemple does not provide any support for this assertion. There are no medical reports or other evidence in the

record indicating when Plaintiff was diagnosed with PTSD, the severity of Plaintiff's condition, or the effects of Defendants' conduct on Plaintiff's condition.   Accordingly, Szemple's claim fails on the merits.[10]

**CONCLUSION**

For the reasons stated above, Defendants' Motion for Summary Judgment is GRANTED, Plaintiff's Cross-Motion for Summary Judgment is DENIED as moot, and Plaintiff's Motion to Strike Defendants' Counter-Statement of Material Facts is DENIED.

s/ Susan D. Wigenton, U.S.D.J.

cc:     Magistrate Judge Madeline C. Arleo

---

[10] In light of this Court's conclusion that Plaintiff has failed to: (1) exhaust his administrative remedies, (2) file an Affidavit of Merit, and (3) establish a claim for intentional infliction of emotional distress, it will not address Defendants' argument that Plaintiff's claims against Achebe is time-barred.  (See Defs.' Br. 20-21.)